No. 4121

Second Circuit

HICKS v. GULF REFINING CO. OF LA.

(November 18, 1931. Opinion and Decree.)

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, attorneys for plaintiff, appellant.

J. S. Atkinson and F. E. Greer, of Shreveport, attorneys for defendant, appellee.

McGREGOR, J. This is a suit brought by the plaintiff under the Employers' Liability Act (Act No. 20 of 1914, as amended) to recover compensation for total permanent disability. The plaintiff alleges that prior to September 14, 1929, he had been continuously employed as a pumper in the operation of a certain oil lease by the defendant in Red River parish; that during this time he developed varicose veins in both legs; that in the discharge of his duties as pumper it was necessary for him to "kick off" the engine by the use of his hands and feet; that ordinarily this is done with the left foot, and that through this constant use of his left foot varicose veins were developed upon his left leg, which resulted in the permanent total loss of the use of that member; that upon the loss of the use of his left leg he continued in the same employment by using his hands and right foot; that this use of his right foot then resulted in varicose veins developing to the extent of the full length of his right leg; that, while he was "kicking off" an engine upon the defendant's lease after midnight of September 14, 1929, the varicose veins inside the right knee were ruptured from the shock and strain caused by the impact and force applied with his right foot upon the starting device of the engine. He then alleges that this rupturing of the varicose veins of his right leg constituted an accidental injury, which instantly caused the total permanent loss of the use of that member.

Plaintiff says that he worked the rest of that night, not knowing how serious his injury was. He is positive that he did not work the next night, and, in fact, that he never returned to work until October 22, 1929. The defendant's records, however, show that he was on duty and re-

ceived full pay for the 15th, 16th, and 17th of September, and that he was out on account of the injury thirty-four days, during which period he received compensation at the usual rate allowed by law. It is admitted that he returned to work on October 22, 1929, and worked on the same job that he had always held and remained there until May 3, 1930, when he was discharged for having permitted a bearing on his engine to be burned.

On July 9, 1930, this suit was filed. The trial resulted in a judgment for the defendant, and plaintiff has appealed.

## OPINION

On account of whatever happened to plaintiff some time after midnight on September 14, 1929, he went to Dr. L. S. Huckaby at Harmon in Red River parish. Dr. Huckaby found that a blood vessel had been ruptured on the inner side of his right leg, back of his knee. He found an inflamed place about the size of an egg, and made an incision to drain the blood, and applied the necessary bandages to prevent any further hemorrhage. A day or two thereafter, on September 20, 1929, the plaintiff was conveyed to the Highland Sanitarium in Shreveport, where he received treatment at the hands of Dr. J. A. Hendricks. He remained in the sanitarium nine days, and was discharged on September 29th. The place of the incision was completely healed, and it was necessary that plaintiff have complete rest for a few days. After a sufficient period of rest as prescribed, the plaintiff reported back for duty on his same job on October 22, 1929, and continued to work as usual until May 3, 1930, as stated above. All expenses incurred on account of the alleged accident were paid by the defendant, and in addition thereto the usual workmen's compensation was paid for a period of thirty-four days, the time lost by the plaintiff.

The first disputed question is as to whether the plaintiff suffered an accidental injury within the meaning of the law. It is evident that something happened to him at about the time he states. He is the only witness on this point, and says it happened while he was pushing on the flywheel on his engine with his right foot in an effort to start it. Instead of happening this way, it could easily have happened in due course as he was walking or using his leg in a natural way. He says it occurred about 4 o'clock a. m., but in this he must be in error, for R. L. Bell, a fellow worker, says he found him in a disabled condition at about 1:30 a. m., and assisted him in the starting of the engine at that hour.

In plaintiff's petition it is alleged that he was suffering from varicose veins in both legs, and in counsel's brief it is admitted that at the time of, and for some considerable time prior to, the alleged accident, the plaintiff had varicose veins in his right leg, as well as in his left, but in his own testimony throughout the case, in order to try to convince the court that the alleged injury was received while he was in the act of using his right leg and foot in an effort to start his engine, he vigorously asserts over and over again that his right leg was perfectly sound and fit for the use to which he says he was putting it. As a matter of fact, his allegation on that point in his petition is correct, for it is conclusively proved by impartial testimony that his right leg was seriously affected with varicose veins long prior to September 14, 1929. His eagerness to create a different impression on the court seriously impairs his credibility as a witness when he testi-

fies that the ruptured blood vessel was the result of an accident while he was trying to start the engine. Where one has varicose veins as bad as plaintiff is shown to have had in both legs, a rupture of this kind may be expected at any time, without any accident or outside force. There is abundant testimony to the effect that for some time prior to September 14, 1929, the plaintiff never used his right leg in starting his engine; that whenever his engine stopped, which was not often, he always called in help to start it, and that he never used either of his feet, but that he invariably did his part by pulling up on the wheel with his hands. So it is extremely doubtful as to whether plaintiff's blood vessel was ruptured by his effort to start his engine with his foot, as he claims he did.

But, be that as it may, it is an admitted fact that the wound caused by the incision was completely healed by October 22, 1929, and that plaintiff went back on the same job and held it until May 3, 1930, when he was discharged. There is no evidence going to show that plaintiff's varicose veins were made worse by the rupture or by the incision. There was no complaint as to the manner in which he did his work, but the cause of the discharge was his alleged carelessness in letting a bearing burn in his engine. Whether the discharge was unjust or not, it had no connection whatever with his physical condition. If he had not been found to be careless in the care of his engine, he would have been kept on the job indefinitely. So that it cannot be said that on May 3, 1930, nearly eight months after the alleged accident, he was suffering any disability whatever, which prevented him from earning the same amount that he had earned before.

But plaintiff claims that after he went back to work he always had to have help to start his engine, whereas before the alleged accident he was able to do this alone and without assistance. The preponderance of testimony is against him on this proposition. Outside of his own testimony, there is not a single witness that swears that he ever saw him actually start his engine with his foot alone. R. L. Bell, one of his witnesses, says he could do it, but he never says that he ever saw him do it. Hugh Jones, the only other witness produced by plaintiff on this point, says that he never did see him start his engine with his foot. He states that he worked for eight or nine months on this job with plaintiff, and often helped him start the engine, that he himself always used his left foot, and that plaintiff pulled up with his hands. Jones' employment by the defendant was ended in June, 1929. So, for at least a year prior to the accident and for eight or nine months Jones helped plaintiff, and never saw him use his foot on this job. Now, if plaintiff was using his right foot or leg in this kind of work on the night of September 14, 1929, it seems reasonable that some time during a period of eight or nine months prior to June, 1929, when Jones was helping him start his engine, he would have used his foot instead of uniformly using his hands. This testimony is rather convincing that he did not use his foot or leg on the night of September 14, 1929, and that whatever happened to him in his right leg occurred in the course of his walking, as an expected result and natural consequence as often happens in varicose veins.

It may well be that at the time of the trial of this case, January 22, 1931, plaintiff's condition was such that it would have

been painful for him to undertake to do any kind of manual labor, but it has not been proved that that condition was brought on or hastened or aggravated by anything that happened on September 14, 1929, either accidentally or otherwise. One suffering from varicose veins grows worse continually from the nature of the disease itself. Plaintiff has been suffering from varicose veins in both legs for several years, and his condition has been getting worse all the time. At various times in the past different witnesses had occasion to see the condition of both legs. On April 15, 1927, Dr. W. W. Agnew examined him and found varicose veins in both legs. On May 29, 1928, Dr. R. L. Cherry examined him and found large varicose veins in both legs, especially the inner side of each knee. This latter report would indicate a much worse condition than was found in the first report. Therefore, it is not surprising that, with this serious condition in May, 1928, or a year prior to the alleged accident, three years thereafter the plaintiff's condition was such that he could not work without pain. From the evidence in the case we find that this condition is the expected result and natural consequence of the ordinary course of the disease from which he is suffering; that it was not caused, aggravated, or hastened by an accidental injury received in the course of his employment. Whatever happened to him, either accidentally or otherwise, on September 14, 1929, was cured, and he worked on the same job for the same money, performing the same duties in the same manner as before.

For the reasons assigned, the judgment appealed from is affirmed; the plaintiff to pay the costs of both courts.